**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MIGUEL ANTONIO PEREZ,

Petitioner,

v. No. 2:26-cv-01465-DHU-JHR

MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; MARY DE ANDA-YBARRA, El Paso Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, U.S. Attorney General; WARDEN, Cibola County Correctional Center,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner Miguel Antonio Perez's Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. For the reasons below, the Petition is **GRANTED.**

## I. BACKGROUND

On September 26, 1995, Petitioner, a native and citizen of Cuba, was admitted to the United States as a refugee, and subsequently adjusted his status to Lawful Permanent Resident. *Id.* ¶ 29.

On October 25, 2001, Petitioner was convicted of lewd or lascivious assault on a child under 16 years of age in Florida state court. *Id.* ¶ 30. He served the sentence imposed and was transferred directly from the Florida Department of Corrections to Immigration and Customs Enforcement ("ICE") on May 3, 2004. *Id.* Petitioner has had no criminal history since that conviction, a period now exceeding 20 years. *Id.* On May 19, 2004, an Immigration Judge entered a final Order of Removal against Petitioner based on that conviction. *Id.* ¶ 31. ICE reviewed

Petitioner's record and determined that removal was not significantly likely in the reasonably foreseeable future. *Id.* On September 21, 2004, ICE released Petitioner under an Order of Supervision pursuant to 8 U.S.C. § 1231(a)(3). *Id.* Since his release, Petitioner complied with every term and condition of his supervision. *Id.* ¶ 32.

On November 6, 2025, ICE re-detained Petitioner and revoked his Order of Supervision under 8 C.F.R. § 241.13(i), stating that "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* ¶ 33. The changed circumstance ICE identified was the possibility of removal to Mexico. *Id.*

In February 2026, Petitioner filed a Petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Florida, Fort Myers Division ("Middle District"), *Perez v. Noem*, Case No. 2:26-cv-502-KCD-DNF, raising a claim under *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), which he also raises here. *Id.* ¶ 12. On April 20, 2026, the Middle District denied that petition without prejudice solely on the ground that Petitioner had not yet been detained for 6 months, rendering the *Zadvydas* claim unripe. *Id.* ¶ 13. The Middle District stated that the denial was "without prejudice to Perez refiling a new petition should his current detention exceed the [6]-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* ¶ 14.

At some point after the denial of Petitioner's original Petition, ICE transferred Petitioner to the Cibola County Correctional Center in Milan, New Mexico. *Id.* ¶ 17. Petitioner subsequently filed the instant Petition, alleging that "[a]s of the date of this filing, Petitioner has been detained for more than 6 months, curing the sole deficiency identified by the Middle District." *Id.* ¶ 15.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Generally, when a noncitizen becomes subject to a final order of removal, the Department of Homeland Security ("DHS") "must physically remove him from the United States" within 90 days. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528, 141 S.Ct. 2271 (citing § 1231(a)(1)(A)). This is commonly referred to as the "removal period." *Id.* During the removal period, DHS "shall detain the [noncitizen]" as it conducts the removal. § 1231(a)(1)-(2). If DHS does not remove the noncitizen during the removal period, the noncitizen must be released "pending removal . . . subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3).

Under Section 1231, a noncitizen's 90-day removal period "may be extended in at least three circumstances." *See Johnson*, 594 U.S. at 528-29 (citing §§ 1231(a)(1)(C), (c)(2)(A), (a)(6)). This extended period is commonly referred to as the "post-removal-period." *Johnson*, 594 U.S. at 529. Section 1231, however, "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. The post-removal period is, instead, limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States," which is presumptively 6 months, or one 180 days. *Id.* [1] "After that point, if the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release [him]." *Johnson*, 594 U.S. at 529; *see also*

---

[1] "Although not expressly stated, the Supreme Court appears to view the 6-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2006).

8 C.F.R. § 241.13. To satisfy his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the noncitizen need not "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701.

If the noncitizen's removal is not reasonably foreseeable, the Court "should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. "In that case, . . . the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of these conditions." *Id.* at 700.

## III.
## DISCUSSION

Petitioner argues that his prolonged detention—now exceeding 6 months—violates Section 1231 and the Due Process Clause of the Fifth Amendment. Doc. 1. at 8-11. Respondents argue that "[t]he U.S. government (and to a certain extent the Court) will not know whether Mexico or another third country is a viable option until Petitioner becomes cooperative and does the various tasks that U.S. ICE asks him to do (fill out paperwork, [e]mbassy interviews, etc.)." Doc. 5 at 5. Petitioner replies that Respondents neither provide evidence that he affirmatively obstructed removal nor provide evidence that "any receiving country ever agreed to accept him even assuming full compliance." Doc. 8 at 3.

The Court first finds that the presumptively reasonable 6-month-period of detention has expired, *see Zadvydas*, 533 U.S. at 701, for Petitioner has been detained since November 6, 2025—a period of almost 11 months. Doc. 1 ¶ 4.

The Court next finds that Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner asserts that DHS has been unable to remove him and has failed to provide evidence that Mexico is willing to accept him. *Id.* 1 ¶ 34. The record shows that the Government has made efforts to remove Petitioner to two countries: Cuba and Mexico. *Id.* ¶¶ 33-35. With respect to Cuba, removal is not reasonably foreseeable because the Cuban government has twice denied repatriation. Doc. 11-1 at 1-2. With respect to Mexico, Petitioner contends that Respondents have not produced any documentation showing that Mexico has agreed to accept him, and that DHS's assertions regarding third-country removal are speculative. Doc. 1 ¶¶ 34, 40.

Respondents do not dispute these assertions. Instead, they state that ICE and other relevant immigration officials need Petitioner's cooperation in order to remove him because the U.S. Government will not know whether Mexico or another third country is a viable option until Petitioner does the various tasks that ICE asks him to do. Doc. 5 at 3-5. However, the Declaration of Deportation Officer submitted on September 3, 2026, does not provide an anticipated timeline to remove Petitioner. *See generally* Doc. 14-1. Therefore, Respondents' own evidence confirms that DHS has no accepting country and no reasonably foreseeable timeline for removal.

This lack of evidence constitutes "good reason to believe" that removal is not reasonably foreseeable. *See Zadvydas*, 533 U.S. at 701. Courts in this District have repeatedly held that prolonged detention, combined with failed or nonexistent removal efforts, satisfies a petitioner's initial burden under *Zadvydas. See, e.g.*, *Lopez Diaz v. Blanche*, No. 2:26-cv-2548 KWR/DLM, slip op. at 4-5 (D.N.M. Aug. 25, 2026) (finding petitioner satisfied his burden where Cuba refused entry, Mexico had not agreed to accept him, DHS had not secured travel documents, and DHS provided no evidence that any country was willing to receive him); *Gebremskel v. Ortiz*, No. 1:26-

cv-1240 MIS/GBW, 2026 WL 1346552, at *2-3 (D.N.M. May 14, 2026) (finding petitioner satisfied his burden where months of attempted removals to several third countries were unsuccessful, DHS provided no evidence that any country was willing to accept him, and DHS's declarant admitted "[t]he anticipated timeline to remove Petitioner[ ] [was] currently unknown"); *Kardouh v. Lyons*, No. 2:26-cv-0619 DHU/JMR, 2026 WL 905361, at *2 (D.N.M. Apr. 2, 2026) (finding petitioner satisfied his burden where efforts to obtain travel documents from Syria and Brazil were unsuccessful and "no country had agreed to accept him"); *Salazar-Martinez v. Lyons*, No. 2:25-cv-0961 KG/KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (finding petitioner satisfied his burden where DHS contacted multiple countries without success and pending third-country requests were too speculative). Here, like in the cases above, Respondents have not shown that any country has agreed to accept Petitioner, DHS has not secured travel documents, and DHS does not indicate that it has an anticipated timeline for effectuating removal.

Courts in this District also consider the length of time a petitioner has been under a final order of removal without being removed. In *Diaz v. Warden of the Torrance County Detention Center*, the court held that the Government's failure to remove the petitioner for 37 years, without more, satisfied the petitioner's burden under *Zadvydas*. No. 1:26-cv-2019 MIS/JMR, 2026 WL 2030124, at *2 (D.N.M. July 14, 2026). Likewise, in *Mendez v. U.S. Immigration & Customs Enforcement*, the court found the petitioner met his burden, without more, where he had been under a final order of removal for 10 years and DHS had long determined that removal could not be effectuated within a reasonable time. No. 1:26-cv-1448 MIS/DLM, 2026 WL 1453487, at *2 (D.N.M. May 22, 2026). Here, Petitioner's removal order has been final since 2004, and DHS still has not identified any country willing to accept him. Accordingly, Petitioner has met his initial burden under *Zadvydas*.

Once Petitioner makes his initial showing, the burden shifts to Respondents to produce evidence demonstrating a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Respondents have not done so.

The Declaration of the Deportation Officer filed on September 3, 2026, asserts that Petitioner has thwarted ICE's attempts to effectuate removal by stating on May 3, 2026, that he would not comply with any attempt to remove him to a third country. Doc. 14-1 at 2. The record provides no further details regarding any actual instances of Petitioner's non-compliance beyond his mere intent of such. The Declaration further asserts that on June 4, 2026, Respondents submitted a third-country removal request to ICE's removal operations team. *Id.* Respondents provide no evidence, however, that any third country has agreed to accept Petitioner, nor do they identify any ongoing communications or concrete progress toward securing travel documents. Such evidence is insufficient to rebut Petitioner's showing under *Zadvydas.* Accordingly, the Court finds that Respondents have not produced evidence demonstrating a significant likelihood of removal in the reasonably foreseeable future.

The Court finds guidance in *Cadogan McNaught v. De Anda-Ybarra*, No. 2:26-cv-1577 KG/DLM, 2026 WL 2253873 (D.N.M. Aug. 4, 2026). There, Respondents argued that a Cuban national's removal was reasonably foreseeable because he had refused to cooperate with removal efforts to Mexico. *See id.* at *1-2. Respondents asserted that Cuba's political situation made Mexico a "suitable and safe alternative[,]" and that the petitioner's refusal to sign removal paperwork constituted a failure to comply with removal efforts. *Id.* at *2. The Court rejected that argument, explaining that obstruction does not defeat a *Zadvydas* claim unless DHS identifies "actual, concrete steps" toward removal and produces evidence that a receiving country has agreed to accept the petitioner. *See id.* Respondents had not shown that Cuba had changed its prior refusal,

had not shown that Mexico agreed to accept the petitioner, and had admitted it had "no updates" on removal efforts. *Id.* Because DHS failed to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the Court ordered the petitioner's release. *See id.* The same reasoning applies here: although Respondents cite Petitioner's intent to not comply, they have not produced evidence that any country has agreed to accept him. As in *Cadogan McNaught*, alleged obstruction alone cannot cure the absence of an available removal pathway.

Courts have consistently distinguished cases in which obstruction defeats a *Zadvydas* claim because DHS has already established a viable removal pathway. In *Abiodun v. Mukasey*, the Tenth Circuit Court of Appeals upheld continued detention where ICE had secured travel documents, attempted multiple charter flights, and there was "no showing" that Nigeria would refuse to accept the petitioner; under those circumstances, the petitioner's refusal to cooperate was the only barrier to removal, and therefore "[did] not raise the specter of indefinite detention." 264 F. App'x 726, 729 (10th Cir. 2008) (unpublished). Similarly, in *Zayas Rodriguez v. Baltasar*, the United States District Court for the District of Colorado upheld continued detention where Mexico expressly agreed to accept the petitioner, ICE served multiple Notices of Removal, and DHS represented that removal would occur "as soon as" the petitioner signed the paperwork. No. 1:26-cv-0686 RMR, 2026 WL 1618516, at *5-6 (D. Colo. June 5, 2026). The Court reasoned that, because removal was otherwise significantly likely, the petitioner's refusal to sign was "fatal to his request for habeas relief." *Id.* at *6 (citing *Zadvydas*, 533 U.S. at 701). Here, Respondents have not produced evidence that any country has agreed to accept Petitioner. Unlike *Abiodun* and *Zayas Rodriguez*—where obstruction prevented an otherwise available removal—Respondents have not shown that removal is reasonably foreseeable regardless of Petitioner's cooperation.

Because Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and because Respondents have not rebutted that showing, his continued, indefinite detention violates Section 1231 and the Due Process Clause, and he is entitled to immediate release subject to appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3). *See Jimenez Chacon v. Lyons*, 811 F.Supp.3d 1299, 1313 (D.N.M. 2025); *Salazar-Martinez v. Lyons*, No. 2:25-cv-0961-KG-KBM, 2025 WL 3204807, at *2-3 (D.N.M. Nov. 17, 2025).

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner from custody within **twenty-four (24) hours** of this Order and subject him to appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3).

**IT IS FURTHER ORDERED** that Respondents file a Notice of Compliance no later than **three (3) days** from this Order confirming Petitioner's timely release.

Finally, because the Court is adjudicating Petitioner's Petition and granting him relief in this Order, Petitioner's Motion to Expedite Ruling (Doc. 10) and Second Motion to Expedite (Doc. 13) are **DENIED AS MOOT**.

The Court will issue a separate Final Judgment but retain jurisdiction over the matter to ensure compliance with this Order.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE